Okay, the next case call for hearing is 412-0869, Settlement Funding v. Kathy Brenston, Mr. Goldberg and Ms. Green-Kelley.  May it please the Court, this is an appeal to the 100 and over from our ability to be able to sustain a 214-01 petition. I know Your Honors have read the record, but just a brief summary, there's a medical malpractice summary. Settlement with the University of Illinois on the case of the 14-year-old family. As part of the settlement, there was an annuity, two annuities that were granted, and they were to provide Kathy Brenston with payments for the rest of her life. Both the settlement agreement and the annuities, which are part of the record, were signed by the University of Illinois. They were party to all of the contracts. They were signed signatory to it. All of those agreements contained the provision that the payment for Kathy would never be signed or sold in any way. This was done to protect her from not having funds through the future. Settlement funding contacted her. She entered into four different assignments that resulted in three different petitions being filed. One petition was filed in Peoria County. It is not subject to this appeal. The other two petitions were in Sangamon, which are subject to this appeal. In one of the petitions, there were actually two assignments within it, so there were three different assignments. Let me stop you there. What is happening in the Peoria County case? It was dismissed, and it is on appeal also. Was the petition for approval of the transfer dismissed? No, the 214.01 petition. Oh, 214.01. The petition for approval was granted. We filed a 214.01 petition similar to one we did here. It was also beyond the two years. It is on appeal, too. A lengthy opinion was rendered by the court in that case, but that is on appeal. And what's the status of that appeal? We're waiting for an argument date. It's been fully briefed. Fully briefed. Okay. And is there a federal case pending? There is not a federal case pending. It's confusing, if I may. There is a class action that was initially filed against settlement funding. The attorneys that were involved in the case were settlement funding. That case was stayed by Judge Flynn and the Circuit Court of Cook County, ordering us to go to arbitration, both on behalf of Kathy Brenston with settlement funding, because under the assignment agreements, there was a mandatory arbitration provision. Also, my client, Alexia Myers, who was a party in the class action, similarly in Sangamon County with the petitions, we were required to go to arbitration on those cases. We have arbitrated the Alexia Myers matter, and as a result of the arbitration, that was finally settled, and we agreed to dismiss the appeals on Alexia Myers' claims. One of his was filed within the two-year period. Others were filed outside, but that's all been settled as a result of the arbitration. The class action is still going in the Circuit Court of Cook County. There were cases against the insurance companies themselves, MassMutual, GE, General and Allstate, that were filed in the Circuit Court of Cook County as breach of contract cases. Those were removed to the federal courts and then subsequently have been remanded to the Circuit Court and then consolidated in the class action, and also they are on stay right now pending some motions and resolution of the arbitration with Kathy Brenston's matter, which is we're going to be arbitrating the settlement funding. It's currently set for September 9th. Thank you. What settlement funding did in this case is the case law in Illinois is absolutely clear. There's no case to the contrary that when the underlying settlement agreement and the annuitants has anti-assignment provisions, you do not invoke the Structured Settlement Protection Act. You can't file a petition under the Structured Settlement Protection Act because the court doesn't have the authority to act. That's the language from Ingray Nitz, the Henderson case, the Schaefer case, all in Illinois. Interestingly, some of the key cases in those, the Schaefer, Henderson, and that first, were handled by Brian Mapp, the same attorney who handled this case with Kathy Brenston. What they did was they filed a petition in Sankin County. Why? We still don't know. But Kathy Brenston has always been a resident of Cook County. Her case was in Cook County. And the venue provision of the statute, the SSPA, says it shall be filed in the county where the underlying action was or could have been filed. The only place this could have been filed was Cook County. That's the place it was filed. They chose instead to go 200 miles to Springfield. And then they referred her to a lawyer, Matthew Cate, who they got to represent her, who they knew represented everyone or lots of other settlement funding people in Springfield who don't live down there. They just referred them to Matthew Cate. Who pays for Matthew Cate? Matthew Cate is a deduction from the, when they get the assignment approved, if they get it approved, when they get it approved, funds are deducted from what Kathy is to receive to pay Matthew Cate. He's also paid by settlement funding if, according to him in testimony, if the settlement doesn't go through, he gets a lesser fee. Is that disclosed to the client in a contract? We can't find a contract that discloses that. Let me ask you about this claim of filing in the wrong county. They say you waived that. You say you're not allowed to waive it by statute. Yes. But statutory venue requirements are procedural only. I recognize the statutory venue requirements are procedural, but, however, in this statute it specifically says you can't waive it. The statute itself, under the SSPA, it's a language I've not seen in very many other statutes, but the language of the statute itself says that no provision of the SSPA may be waived by the payee. So when they're arguing that Kathy Branstad waived it, they're arguing that they violated the SSPA under which they were seeking approval in the first place because you can't waive it. The statute specifically says you can't waive it. That's if it even applies. Pardon? That's if it even applies. If the SSPA applies. We believe the SSPA doesn't apply, and that's the first fraud upon the court. Under the Miller v. Balfour case, I recognize that all courts of Illinois are courts of general jurisdiction. We've gotten away from specialty courts and all that. But under the Miller v. Balfour case, many other cases from the Illinois Supreme Court, you can't make a fraud upon the court to get jurisdiction. You cannot say something that's undue. And what they did in their petition, we've cited their petition in here, but in their petition, which is part of the record, they made blatant misstatements. Brian Mayer, who handled many of the other cases prior to this one, where the Illinois courts had said you can't do this, specifically said in a petition signed by him that the transfer does not contravene any federal or state statutes or order of any courts or responsible governmental firm. It violates and contravenes the orders of the Illinois Appellate Court, and the Henderson case is a Fourth District decision, which is one of the first ones in the state, in the county in which this case was penned. They make that fraud, and then as to conceal this, they have a hired man from Kane who doesn't object to anything. Sends a letter saying it would be a hardship for her to come to court, so therefore we wanted to prove it. Well, it wouldn't be a hardship if you go into Cook County, where it would never have been granted anyway, because Wyszynski heard these and didn't grant them, because you cannot grant these. So they filed a motion to dismiss. Several days before that, I had represented Caffey in the underlying medical malpractice case ten years ago. I had handled that case. Shortly before this, I started to become very concerned about her mental capacities. Mental issue is not an issue in the medical malpractice case. It dealt with gynecological surgery. I became very concerned, and I filed an emergency motion before the court, in this case before the ruling, saying, please stay the proceedings until I can investigate this. I filed the identical motion in front of Judge Flynn in the Circuit Court of Cook County. Judge Flynn granted my motion to stay so that I could investigate this and see if a guardian needed to be appointed. In the Circuit Court of Salem, that motion was denied, and I was told to go ahead and argue. And the transcript was before the court here. I said, wait, I can't argue. I'm violating my rule of training, canons of ethics, if I represent a person who I believe to be mentally incompetent. On the other hand, the court is asking me to go ahead and argue while I'm standing there. So I did go ahead and argue. I asked for it to be held in abeyance. The judge allowed us, required we argue. Subsequent to that, I continued my mental investigation of her. I had a Circuit Court of Cook County probate proceeding entered, and a guardian has been appointed for her. A copy of the order is attached and is part of the record. And in the order, the Circuit Court of Cook County found, Judge Pomago found, quote, the respondent is a disabled person and is totally unable to manage her estate or financial affairs. After having that order, I then went back to the Circuit Court of Salem County. Prior to the ruling having been made on a motion to dismiss, they were under advisement, and I argued again, please hold this in abeyance. I've got to go further with this. We've got issues here of her mental competency, and her mental competency would hold the statute in attention. If she's legally disabled, the statute is told under 214.01. The court entered an order on April 2nd saying, the matters in this case before the court are issues of law to be decided by the court. The plaintiff's competence is not relevant to the pending motions to dismiss. Well, of course, the plaintiff's competence would be relevant if I could file an amended petition alleging that, because that absolutely told the statute of limitations. We were denied the right to do that. The 214.01 petitions, we believe, were inappropriately denied for a number of reasons. Number one, we never got the substance here again. Number one, you cannot get jurisdiction if you do it by fraud. And when you petition to a court of this state and violate your canons by telling the court there's no law contrary to what we are asserting, you've violated the canons, you've impinged on the integrity of the court system. And when a lawyer stands in front of a judge, as I stand before you today, I have an absolute obligation to tell you if there's law contrary to my position or if there's something that I'm hiding from you or if there's something that I'm not saying. And Brian Mack signed a petition denying all that when he was the attorney at record in the three leading cases in Illinois saying you can't do this. If there's an anti-assignment clause. Yes. And did Mr. Mack inform the court that there was an anti-assignment clause in this case? No. It's not in the petition saying there was an anti-assignment clause. What was said, there is no transcript of that day, but there was an agreed order entered and it doesn't mention anything about an anti-assignment clause. The order is silent on it. Neither Matthew Tate, who set up the funding to arrange for, nor Brian Mack, to our knowledge, mentioned to the court or informed the court of the anti-assignment clause or the law with regard to it. It sounds to me like you're making a Rule 137 argument against this gentleman. I'm making a Rule 137 argument among many others that I'm making against him. I find what happened here, when we enter into a settlement with a client, the medical malpractice case, where I have the University of Illinois sign it, and I have the University of Illinois sign the annuity contract, and then they go before a court and don't tell the court that we're going to modify the assignment, the annuity, and it's not signatory. The Board of Trustees at the University of Illinois is not before the court. And I'm not going to tell you they're signatory to this. You can't modify a contract unless all parties in the contract modify a contract. That was basic contract law. Did the petition for approval of the assignment attach the structured settlement documents that contained the anti-assignment provisions? It did not attach the underlying settlement agreement. That I know. So it wasn't before the judge at all if he went through and read it all? No. The annuities may have been there. Depending on which copy I get, sometimes it's something attached, sometimes not. I don't want to say whether it was. But I know as a matter of fact, the settlement funding has filed back and said they were never able to find the settlement agreement. And yet, in their files, I'm listed as the attorney of the record. No one ever called me and said, can we get a copy of the settlement, nor called the Board of Trustees of the State of Illinois. So we get to fraud that voids the judgment. We get to the statute of limitations, which I believe is told for a couple of reasons. Primarily and most importantly, when you get Matt and get Kate involved, and Kate doesn't tell the client that what you're doing is illegal and what you're doing is violating a contract, then Kathy Grenson certainly didn't know there was a statute of limitations around it because the attorney that settlement funding got for her didn't tell her that. Mr. Goldberg, you just mentioned the word void. Your papers seem to indicate that you believe the decision by the trial court was void ab initio. Yes. So if we accept your proposition that it was void ab initio, you would agree that, I guess you would argue, that that could be attacked at any time. And that's what I'm saying. It's a multi-parameter. I mean, 214 doesn't matter. If it's void, which we contended was because it was a fraud of common court and jurisdiction is lacking, it's void to be attacked not only any time, it can be attacked collaterally. It's a void judgment. If, on the other hand, the court were to say that, no, it's not void, the statute of limitations requiring us to be within two years still would not run against her because of the fraudulent concealment of the statute of limitations by them providing her with Matthew Cade as her attorney. But even if we go beyond all of that, after the court dismissed this, we filed a motion to reconsider. You must remember I tried to state the proceedings twice. I've got a probate court holding her incompetent. I've stated the proceedings a couple of times. I went back before the circuit court and said, please reconsider this in light of the fact that she's a mental incompetent. And I filed a petition alleging all of the facts. Now, several funding wants to turn that into a motion for summary judgment somehow and say, well, look at what Dr. Amador says and look at this. Her motion to strike, her motion to dismiss, you take the pleadings as they are. I've got a – I allege in the pleadings that she has mental deficiencies. She's been hospitalized. She's schizophrenic. She has epilepsy. She has – had had a stroke. She had had multiple things. We got into a factual question about her mental competency. I've got a circuit court in Cook County order saying she's totally incompetent. They're saying, no, you still shouldn't be able to do this. The interesting thing – argument can be made that if this court were, for some reason, I hope they don't, deny my petition, we'd never raise the question of legal competency because I've never been allowed to raise that question. So I could go back tomorrow and say, okay, we should never be legally competent because that question is not before the court. The court denied me the right to file the amended petition, and I've never had a right, although I tried to do it. They kept arguing, which I've never understood. Let me ask you a question. The settlement documents that we're talking about in these annuity contracts, were they approved by the court in Cook County? Yes. So there was a court proceeding that approved the original underlying case. I apologize, Your Honor. I want to stand corrected. Kathy Princeton was an adult. So while we pre-tried the case and settled it on pre-trial and mediation, there was not a settlement hearing as such. So I apologize for that. Not like if it would have been minor. I apologize. But the court was aware the case settled. Now there was a court aware the case settled. The court was aware of how we settled with the annuities and all that because, Your Honor, we did have a petition to approve the settlement and approve attorney's fees and costs in a case like this because there was a petition for fees, in which case you have to detail and outline what the settlement was. Right. So the court would have then reviewed under the statute allowing attorney fees, under the graduated statute. Absolutely. So I'm not saying they won't approve the actual document, but they certainly approved the settlement. Okay. Let me ask you a question about this claim of legal disability. The guardianship order and the doctor's report show that she was not currently legally disabled during the statute of limitations period. No, it doesn't, Your Honor. With all due respect, page A338. And, first of all, the guardianship only deals with her capacity at the time you're going before the probate court for guardianship. The court is not going to look back and do, unless there's a need to void contracts, what she was like eight years before. But the court order that was entered on April 30th says the respondent is a disabled person and is totally unable to manage his or her estate or financial affairs. That's at page A338. That's the order that was entered. That's the order we're still working under right now. U.S. Bank has been appointed as her guardian in the probate court. So in front of this court are all the issues with 214.01, but also the motion to amend the petition allows to bring the issue of legal incompetency because it's a factional issue for the court to determine. Our petition alleges sufficient facts for the motion to dismiss. They want to, like I said, turn it into motion for summary judgment with Dr. Amador's report and other reports. We're going to put out another reference, too. The petition is what we're alleging at this point, and then you get to an evidentiary hearing on whether there's truly incompetency sufficient, excuse me, going back years when this was entered. But the issue before the court, I'm denying. They've never even ruled out sufficiency in my complaint, my amended petition, because the court wouldn't let me file it. If the order from the Sangamon County Court is void ab initio, what happens? If it's void ab initio. What's the remedy? I'm sorry. Go ahead and answer. What will happen? Is she going to return the money? What happens? Your Honor, I'm not sitting here trying to say somebody should get a windfall. What would happen is you would go back, you void the order, you reconstruct financially what has occurred, what money should have gone to her, all the money should have gone to her, that should have gone to her, will go to her, less what she has already received. There would be a full accounting of that. But settlement funding shouldn't be sitting here making the benefit of she is living almost penniless right now. She has a social security disability. The federal government has declared her disabled. She's on a federal social security pension also because of her disability. So it's not just me trying to say she's disabled. She was disabled actually during the time they were filing these petitions. She was under a social security disability that they didn't advise the court of. Okay. So there would be an accounting without a windfall. Okay. Thank you. I think I've exhausted my time. And I'll give you some extra minutes as well. But thank you, Mr. Goldberg. Thank you, Your Honor. Yes, we're aware of that. But if you put it there, I certainly can't read it. I took a handout. In case I didn't know what this courtroom looked like. So I brought copies that I can hand out to Your Honors. I would appreciate it. I'm sorry. I just saw this this morning. Do you need a few minutes? Well, no. What I'm saying is I'll try to work within it. But I just saw it this morning for the first time. Did you not give notice? Because we were told days ago that you were going to do this. Yeah. I'm sorry. I'm sorry for my ignorance here. But where are you from? So he's from Chicago. Do you have an objection to the exhibit? Yes. We'll strike it. We'll strike it, Mr. Goldberg. Thank you. Okay.  Ma'am, please be quiet. What we're dealing with here are two final judgments. Final judgments. There's a public policy that supports the finality of judgments and the reliance that people place on the judgments. And, in fact, here more than just Ms. Branstad and Peachtree are relying on these judgments. The annuity providers and the qualified assignees also have been relying for six years on the finality of these judgments. Now, this isn't a case where the statute of limitations was missed by a day or a week. It was missed by two years in one case of one order and by a year and a half in the other. And, as we know, in Seidel v. Seidel and in the older Supreme Court of Crowell v. Blanding, the two-year statute of limitations in 214.01 is strictly construed by courts and cannot be extended by judicial fiat even under circumstances where it's believed to be warranted. Are you familiar with the case law, however, that says if the order is void ab initio, that it's never going to be a valid judgment whether it's within or without the two years? Yes, and the only way that an order is void ab initio is if the original court entering the order lacked personal and subject matter jurisdiction over the matter. Or if it was procured by fraud. You agree that if the judgment was procured by fraud, it's void. And there's actually a fourth one, and that is if the court exceeds its jurisdiction. And here, the case law is clear, including in the doctrine of Yale and Tom's redemption, that a fraud on the court must be extrinsic fraud of the type that deprives the court of personal or subject matter jurisdiction. All of the cases cited by Brenston are cases where the fraud deprived the court of personal jurisdiction over the party whose rights were being decided. Here, venue and the existence of an anti-Assange clause do not deprive the court of subject matter jurisdiction, which is conferred by the Illinois Constitution. Okay, let's just for hypothetical purposes agree that there is subject matter jurisdiction and personal jurisdiction of the court. Why and on what basis do you claim that the Structured Settlement Protection Act applied in this case in the face of the anti-Assange clause and all the cases, even out of this district before the amendments, that say you do not use the SSPA when you have an anti-Assange clause? The law on that is pretty clear. Sure. The SSPA, first of all, does not address anti-Assange clauses at all, the statute itself. The cases referred to, including in Rehnnitz and Henderson, all stand for the same proposition, which is that if there is an anti-Assange clause in a contract and a party for whose benefit that anti-Assange clause was placed can object. And the court is without authority to deprive the parties of the benefit of their bargain. How do you object to something you don't know? The anti-Assange provisions were not disclosed to her by her attorney. Well, first of all, what's clearly missing in the petition is that anybody gave settlement funding a copy of it. But even if they had had a copy of the settlement agreement, the University of Illinois assigned its obligations and rights under that agreement to the qualified assignees. Those are now the entities that stood in the position, and for whose benefit the anti-Assange clause is replaced because Internal Revenue Print Section 130 provides a tax benefit to the qualified assignee upon receiving that assignment, but only if there's an anti-Assange clause. What was the consideration for amending that contract between the University of Illinois and the insurance companies? What was the consideration used by settlement funding or any party, Allstate, GE, whoever? What was the consideration for us to allow the amendment to the contract? Well, first of all, University of Illinois assigned it to the assignment companies and paid the assignment companies. Now, under Internal Revenue Print Section 130, if the assignment company then uses that money to buy an annuity, there is not a taxable transaction on the receipt of the money. As long as there's an anti-Assange clause. Right. Now, what happens later is if all of these cases are decided before 2002, and in 2002 ---- In reforman was decided in 2006. Okay, but the transaction was before. And let me just make a point here. These cases don't just stand for the proposition that someone can object. They say the act does not apply. I'm quoting from that case, quote, based upon the foregoing, because the structured settlement agreement in this case contained an enforceable anti-assignment provision, the act does not apply and the petition must be dismissed, close quote. It says the act does not apply. First of all, Ms. Brenston signed the settlement agreement with the anti-assignment clause. She's the only one with knowledge of that anti-assignment clause, and she did not raise it. I think what we're asking you to do, just so the question is clear, is distinguish your case here from the law that Justice Stewart just read. How do you distinguish this case? This case is distinguishable because of the following. And I'll use N. Ray Nitz as an example. In N. Ray Nitz, there had been prior transfers between the individual with the structured settlement payment recipient and the background company, and they had all been transferred. The transfer before the court at the time was a subsequent one in which the qualified assignee and the insurance company objected, timely. They had been given notice, which in this case, the insurance companies and the qualified assignee all received notice of the hearings for the approval of the transfer. And, in fact, they entered into stipulations, agreeing that they wouldn't object. Now, in N. Ray Nitz, the court merely made the unremarkable decision that because the qualified assignee was timely objecting, timely objecting, and saying, I want you to enforce this provision because I have tax benefits in fighting on it, the court said, we can enforce it. And even though the prior transfers were not objected to, the fact that those waivers would not be used as a prohibition or a waiver by the assignment company to object this time. Importantly, the court at N. Ray Nitz never said those prior transfers were void. I was going to say, that wasn't before the court in Nitz, was it? I mean, I'm looking at Nitz. The court noted that those assignments took place and that that simply was not a waiver by the assignee, the qualified assignment company, to object to it this time. And the court said, we're without power to deprive a bargain for provision. Now, don't forget, in these settlement agreements, it's not as though the qualified assignee is absent. It's in the settlement agreement that this is going to happen, that she agrees, Ms. Brinson agrees, that U of I's obligations are going to be transferred over and assigned to the assignment company, who's going to buy the annuity and be the owner of the annuity, and in a position to decide to waive. Now, the reason they waive is because there's no longer a tax disadvantage. The reason for the objection is to preserve the tax benefit. When that tax benefit is still preserved, then there's no reason for the objection, and they agree, and in this case, they sign a stipulation with Ms. Brinson, with Peachtree, with the assignment company and the annuity providers, saying, we will not object to this transfer, and the only thing is, we do not want our waiver of the anti-assignment clause this time to be evidence in the future if we decide to not waive in the future. Were the anti-assignment provisions disclosed to her by her attorney? Well, if you look at the settlement agreement, she signed it and then Mr. Goldberg signed it. Presumably, he consulted with her on what was in that agreement, and I would point out that the settlement agreement was never incorporated into a court order. It was a private contract, and parties to a contract can waive provisions, and that's exactly what happened here, and it happened in writing. But the case law in Illinois accepts that, but as to anti-assignment clauses, it clearly dismisses the Structured Settlement Protection Act petitions. I couldn't find a case that makes the distinction that you're making. Well, actually, in Raymond's and even in Raymond Henderson's. Your argument basically is that even though the case law says you can't do this and the Act does not apply, it's okay to go ahead with it if the person that we're trying to protect through the structured settlement doesn't object. Not entirely, only partially. What I'm saying is that the cases that say that you can't, I mean, these cases really just stand for the proposition that if somebody objects and wants to enforce a contract provision, they can do it. They say the Act does not apply. Right. And then the attorney for settlement funding in this case goes into court under the Act. Under the Act without knowledge that the settlement agreement has an anti-assignment clause because it's never provided to the Pete Street, and it's not even alleged in the complaint, and it can't be under 137. Do you believe that the lawyer going before the court, because I'm sure this isn't the only case, according to Mr. Goldberg, that settlement funding is had with Mr. Mack. Do you think Mr. Mack has a duty of due diligence to ask whatever person is being asked to buy out the annuity, to get copies from the insurance companies to see if there is an anti-assignment clause? Do you think there is a duty to the court? And you're talking about Mr. Mack who is Pete Street's lawyer. Yeah. I'm wondering if he stands before the court, you said he never got to see these documents. I'm wondering if there's a duty of due diligence to find out in light of the law. What do you think about that? First of all, I have to say this, that much of this is not even in the record. Okay? What we're talking about in the record here is whether the court validly dismissed or rejected the assertion by Ms. Bransman in her petition that the orders were void because of lack of venue and because of the existence of an anti-assignment clause, and whether she pled fraudulent concealment based on fraudulent concealment by her own lawyer of provisions that she signed and is charged with knowledge of. But is it true that Mr. Cate was the lawyer given to her by settlement funding? Settlement funding is alleged in the petition to have referred Ms. Bransman to Cate. Okay. There is no law out there that suddenly gives rise to some extra duty by Pete Street for having referred a lawyer. We never did business with him. I'm sorry to interrupt. Is it true, however, that Mr. Cate gets paid for the representation through the proceeds that the individual eventually gets? Mr. Cate sends an invoice to Ms. Bransman. It's about $200. And it is deducted in a payoff statement that's provided to Ms. Bransman. And if the court proceeding doesn't go through, is there a separate payment by Pete Street with settlement funding? I can't sit here today and tell you that. But there is a fiduciary relationship that arises between Mr. Cate and his client. Right. And so my question, and maybe I should change it, is do you believe that Mr. Cate had a fiduciary duty not to commit a fraud on the court and find out whether there's an anti-assignment clause? I can't tell you whether I think that Mr. Cate breached a fiduciary duty. I didn't ask that question. I want to just know if there's a duty to find out whether there's an anti-assignment clause. I am not aware there is a stipulation by all the parties to the contract saying that there will be no objection. I think one could assume. I mean, you could go on the assumption that there's an anti-assignment clause because Section 130 of the Internal Revenue Code section is the reason why there's an anti-assignment clause. So even if you don't see it, you can assume it. And as long as you go to the person. The anti-assignment clause isn't to protect the person receiving the payments from exactly what happened here? The actual settlement agreement says that there will be a qualified assignment and it will comply with Section 130 and that there's an anti-assignment clause. It's not talking about this kind of assignment, though. I'm talking about the settlement agreement that Ms. Branston signed. It says, and it's very clear, that it's going to be pursuant to Section 130 and it's known that you have to have an anti-assignment clause in order for 130 to apply. So it's negotiated in there for the benefit of facilitating this qualified assignment. So what you've now told us, now we've come full circle, what you've now told us is in order to get the 130 benefit, you have to have an anti-assignment clause. Right. So your client, in looking at any document where there's a 130 assignment, would know there's an anti-assignment clause? Right. And yet doesn't put it in the pleading? Except that now we're after 2002. All these transactions happened after the Internal Revenue Code, Section 5891, is adopted, which says that on a subsequent factoring transaction, under a Structured Settlement Protection Procedure, does not deprive them of their tax benefit in 130. I understand that, but now we're talking about the Structured Settlement Protection Act. There is nothing in the Structured Settlement Protection Act that says anything other than in the event of the transfer of a structured settlement, nothing about any assignment clauses, there has to be a procedure. And that's because the SSPA doesn't apply if there's an anti-assignment clause. There's nothing in there that says it doesn't. But the case law in Illinois says that. Well, the case law, I would argue the case law doesn't precisely say that. Okay, let me switch horses on you for a minute. That's what we say down here. Why did it get filed in Sangamon County? Well, you would agree that's a violation of the Act, it could have fought. No, because the Act says that venue is proper in any place where the action happened or could have happened. Is that what that says? Yes. Could have been filed. Could have been filed. Now, any action can be filed in any circuit court of Illinois that has subject matter jurisdiction. Venue can be waived, even if the parties are out of town, even if the parties are only in Illinois County. Do you think that's what the legislature intended whenever they put that provision in there? So then they're saying if there's no objection, you can file it in any county, so any county is proper venue? Well, if you compare with the other Structured Settlement Protection Acts, yes, most of them say as long as the individual is a resident of the state, it's okay, because what they want is the state is applying its own Structured Settlement Protection Act. As long as Ms. Brenston is within the jurisdiction of an Illinois court, that Illinois court has subject matter jurisdiction, which is conferred by the Constitution, and the Supreme Court in the Belleville v. Toyota case made clear that you can't by legislation deprive any of the Illinois courts of subject matter jurisdiction over events taking place in Illinois and Illinois residents. She was an Illinois resident. Is there any evidence that was disclosed to her that she was waiving venue? She received notice. She submitted an affidavit in support of getting this approval order entered. She asked the courts. This isn't an adversarial proceeding. Both Peachtree and Ms. Brenston wanted the same result. They both wanted this approved. She submitted an affidavit to the court giving the facts to the court to help the court conclude that it was in her best interest. She voluntarily submitted to the jurisdiction of this court. Right, and that affidavit, I presume, was prepared by Mr. Cate, and that affidavit did not indicate there was a non-assignment clause? There is, first of all, no evidence that it was prepared by Mr. Cate, and she signed it. She read it and she signed it. Under her signature, right above her signature, she says, I've read this and I understand it, and she says in the affidavit, I know this is getting submitted to the court. She wanted this order. Judicial estoppel, if I'm not mistaken, taking a 180-degree change. And she's exactly the person that the legislature is trying to protect by the passage of the Structured Settlement Protection Act from herself. But the protections of the act are twofold. One, disclosure. There is no allegation there was no disclosure, and in fact the disclosures are in the pleadings. She received the disclosures. It's fraud is the allegation. Yeah, but fraud of what? Fraud of the? She knew about the anti-assignment clause. She signed the agreement. But the court didn't know. The court had two lawyers before it who did not bring this forward to the court. But the court could assume it because in the petition, in the front of the petition, there is an allegation that talks about Section 5891 of the Internal Revenue Code and explains the reasons for anti-assignment clauses. Which is also why settlement funding knew there was an anti-assignment clause and did not raise it before the court. Because the parties to the agreement, all of the parties, including Ms. Branstad, waived the anti-assignment clause. What about Mr. Goldberg's argument that a person like Ms. Branstad can't waive, even under the SSPA? Is that a provision of the SSPA? No, it's not. I mean, the SSPA is very clear. It's just a disclosure statute and requires the court to make findings. This court made the findings based on information provided by Ms. Branstad. Why was there another petition? If your position is these can be filed in any county, why are two filed in Sangamon and one filed in Peoria? And I assume, was Mr. Mack the lawyer also on that one in Peoria? I believe so. Isn't he from Chicago? Yes. So now, I don't understand, as a downstater probably, why Chicago lawyers are filing one in Peoria, two in Sangamon County. How does that get selected? Your Honor, Mr. Goldberg and I are both from Chicago, and we both represented our clients in this petition in Sangamon County. Most of my cases aren't even in Illinois. But it was originated. I'm the lawyer who won. But if you follow the SSPA, and if you take the interpretation that it should have been filed in Cook County, it seems that everybody's there. Why not? Why not file in Cook? Why one in Peoria, two in Sangamon? But I don't know. Let me just tell you. Go ahead. That there's nothing. First of all, the SSPA venue provision says it can be filed anywhere where it was filed or could have been filed. And under the rules of civil procedure, it can be filed anywhere in Illinois and it was. And venue is merely procedural. It is not jurisdictional. Contract provisions like anti-assignment are not jurisdictional. The order is not void because the court had subject matter and personal jurisdiction over the parties and over the matter. And therefore, the statute of limitation applies. And they did not allege facts to total. Thank you so much. Mr. Goldberg? Thank you, Your Honor. I'll try to just address some of the questions. I'll hit the points quickly. Your Honor asked if she could waive. And I'm just quoting from 215 ILCS 153-30, subparagraph A of the SSPA. Quote, the provisions of this act may not be waived by any payee. They wish to waive. Ms. Green-Kelley argued extensively that the tax code and these anti-assignment provisions were put in for tax code purposes. The Illinois case law, Ingray-Nitz, Schaefer, and Forman have specifically done away with that ruling and grounds and said the anti-assignment clause was put in there for the mutual benefit of both parties. It's not just what they said in the tax code. It is in there for everybody's benefit. Very importantly, Ms. Green-Kelley kept arguing all the parties to the contract wanted it waived. All the parties. We've submitted a copy of the settlement agreement. We've submitted copies of the annuity contracts. The University of Illinois, through its board of trustees, was a named party to each agreement and a signatory to each agreement. And quite often with annuities, the named defendant isn't a signatory. In this case, the University of Illinois was, and their record is clear that the University of Illinois was never given notice about these hearings and did not waive anything with regard to this. So any argument that all the parties wanted it modified is just not true. The University of Illinois was never given notice. Your Honor, I asked the question why it was filed in Sangam County in Peoria, and we've been asking the same question in this case and in Meijer's case and the other cases, and can I find out why? It's 200 miles down here. But Mr. Cape, we know, and it's in the record, sent the clients a letter. The same letter in almost every case. Because it would be a hardship for you to come here, will you want it done and convey this to the court? It's a hardship for her to come here because they chose not to file it in Cook County. Yes, because me and Kelly and I are from Chicago. I went down to Sangam because that's where the petition was. I didn't file it there, but I had her lawsuit to handle her medical malpractice case. I walked across the street from, interestingly, across the street from my office and also Brian Mack's office to the courthouse. The office is a quarter of a block from me, across the street from the courthouse. They chose 200 miles away. The SSPA is not invoked, as Your Honor pointed out, when the contracts specifically have this anti-signing clause. They knew there was an anti-signing clause in the envelope structure, so both because of these tax code at the time, both because of the annuity contracts that were signed, and if they pick up the phone and call me, it's not like I'm hidden. In Renston v. University of Illinois in Cook County, you send a clerk over, you find out what happened to the case, call my office, we give you a copy, you call the Board of Trustees, you get a copy. Call Allstate, they call me, call the annuity company, they say, do you have the unlawful settlement agreement? They didn't want it. They didn't have it because they didn't want it. For all of those reasons, clearly the judgment I believe is void because of the fraud on the court. The integrity of the court, in fact, the integrity of our entire judicial system, is based in part on lawyers having an obligation to be truthful. They didn't tell the judge that the University of Illinois was a signatory to these contracts and you can't do anything with them without the University of Illinois. That is silent. They didn't tell the court about the anti-signing provision, whether it was in the record someplace and asking the court to do it, I don't know. They stood up and said there's an agreed order, and it's an agreed order of Mr. Cage, who they pointed wrong to them, and they point out that all their clients in Illinois agreed to with it. And further, Mr. McCullough still hasn't addressed the fact that one of our arguments here is that we were denied the right to file a petition alleging her mental incompetence and her legal disability, which is still ongoing, and for which the statute would not defer. And that is one of our arguments on appeal, that even if the judgment isn't fraudulent, even if the court had judgment, we still are entitled to a hearing on the merits because she's under a legal disability. We believe the judgment is void. We believe there was a conspiracy between Mr. Cage and Mack and several funding to make sure Cage never told her client, and therefore the statute of limitations was concealed and her rights were concealed under it. And lastly, she is in mental incompetence under a legal disability and entitled to the protection of our laws for which they were intended. For all those reasons, we ask that the judgment of the circuit court be reversed. Thank you. Thank you, Mr. Goldberg. Thank you, Ms. Green-Kelley.